IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PRYOR, JR., a disabled minor, by and through the Guardian of his Estate, CADENCE BANK, ADRIANA MADRIGAL, Individually, and NATHANIEL PRYOR, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>RUSH-COPLEY MEDICAL CENTER, INC.; HINNA KHAN, M.D.; RUSH-COPLEY MEDICAL GROUP NFP,<br><br>Defendants. | No. 19-cv-08496<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Nathaniel Pryor, Jr. (Nathaniel, Jr.) a minor, has hypoglycemic encephalopathy (brain damage from inadequate sugars in the brain), cerebral palsy, seizure disorder, and permanent disability. Nathaniel, Jr.'s parents, Adriana Madrigal (Adriana) and Nathaniel Pryor (Nathaniel, Sr.), and the guardian of Nathaniel, Jr.'s estate, Cadence Bank (Cadence) (collectively, Plaintiffs) filed this medical negligence action against Defendants, Rush-Copley Medical Center, Inc. (Rush Hospital), Dr. Hinna Khan (Dr. Khan), and Rush-Copley Medical Group NFP (Rush Medical Group), the corporate parent of Rush Hospital, alleging that Defendants' negligent medical care and treatment following Nathaniel, Jr.'s birth at Rush Hospital caused his conditions.

Rush Hospital and Rush Medical Group have moved for partial summary judgment on (1) Plaintiffs' claims of actual and apparent agency for the care and treatment provided to Nathaniel, Jr. by Dr. Khan for both Rush Hospital and Rush Medical Group; and (2) for Plaintiffs' claims of vicarious liability against Rush Medical Group for the care and treatment provided to Nathaniel, Jr. by the nurses and lactation consultants of Rush Hospital. R. 121, Mot. Summ. J.[1] For the reasons stated below, the Court grants in part and denies in part the motion for partial summary judgment.

## Background

Shortly after midnight on August 20, 2015, Adriana was admitted to Rush Hospital complaining of contractions. Pls.' Resp. DSOF ¶ 1.[2] Upon admission, Adriana signed a "Disclosure of Physician Employment Status" document on her own behalf, and another nearly identical Disclosure on behalf of Nathaniel, Jr. (collectively the Disclosure). *Id.* ¶¶ 7–8; Defs.' Resp. PSOAF ¶¶ 11–12; R. 122–6, Discl. Form; R. 129–4; R. 129–7.

The Disclosure provides that:

**<u>Employed Physicians</u>**:

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2] Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Rush Hospital and Rush Medical Group's Statement of Undisputed Facts (R. 122); "Pls.' Resp. DSOF" for Plaintiffs' Response to Rush Hospital and Rush Medical Group's Statement of Undisputed Facts (R. 129); "PSOAF" for Plaintiffs' Statement of Additional Facts (R. 129 at p. 6); and "Defs.' Resp. PSOAF" for Rush Hospital and Rush Medical Group's Response to Plaintiffs' Statement of Additional Facts (R. 144).

2

> Physicians listed below are either employees of Copley Memorial Hospital, Inc. or Rush-Copley Medical Group NFP.
>
> [listing 76 physicians]

Pls.' Resp. DSOF ¶ 8. Plaintiffs admit that Dr. Khan's name is not on the Disclosure form under "Employed Physicians." *Id.*; *see also* Defs.' Resp. PSOAF ¶¶ 11–12. The Disclosure also includes a space for the patient to initial, and states that "I understand that if my physician is not listed above, then he or she is not an agent or employee of Rush-Copley Medical Center, Inc., Rush-Copley Medical Group NFP or Copley Memorial Hospital, Inc." Pls.' Resp. DSOF ¶ 8. Further, in bold, the Disclosure provided:

> **I have read and understood this entire form. I acknowledge that the employment or agency status of physicians who treat me is not relevant to my selection of Rush-Copley Medical Center or Copley Memorial Hospital for my care. Any questions I had about this form and the important information contained in it have been answered to my satisfaction.**

*Id.*; Discl. Form (emphasis in original).

The Disclosure also includes a section titled "Non-Employed Hospital-Based Physicians" and lists specialties, including emergency medicine, neonatology, radiology, anesthesiology, intensive care physicians, and other specialties, which provide services but are "not agents or employees" of Rush Hospital. Defs.' Resp. PSOAF ¶ 11–12; Discl. Form.

After Adriana was admitted, it was determined that the baby's fetal heart rate was not "reassuring." Defs.' Resp. PSOAF ¶ 10. So, an emergency Cesarean (C-section) was performed, and Nathaniel, Jr. was born the morning of August 20, 2015.

3

*Id.* Since Nathaniel, Jr. did not have an assigned pediatrician at birth, Rush provided him with defendant Dr. Khan as his pediatrician. *Id.* ¶ 15. When Adriana was admitted to Rush Hospital, Dr. Khan was the "backup call" doctor for Rush Hospital to treat patients that did not have an assigned pediatrician. *Id.*; Pls.' Resp. DSOF ¶ 4. Dr. Khan is a board-certified pediatrician. Defs.' Resp. PSOAF ¶ 1. At the time of Nathaniel Jr.'s birth, Dr. Khan's responsibilities included caring for (1) Associated Pediatrics of Fox Valley's (Associated Pediatrics) newborn babies admitted to Rush Hospital, (2) Associated Pediatrics' inpatient pediatric patients at Rush Hospital, and (3) patients coming to Rush Hospital without any assigned pediatrician, which is called "backup call." *Id.* ¶ 3. Dr. Khan saw Nathaniel, Jr. once per day from August 20 to August 22, 2015, and was his discharging doctor. *Id.* ¶¶ 15–16.

Plaintiffs admit that Dr. Khan was not employed by Rush Hospital or Rush Medical Group, and was employed by Associated Pediatrics when she cared for Nathaniel, Jr. Pls.' Resp. DSOF ¶¶ 2–3. However, Dr. Khan had privileges at Rush Hospital to provide medical care to newborn babies. *Id.* ¶ 4. In 2019, Associated Pediatrics was acquired by Rush Hospital, and Dr. Khan is now employed by Rush Hospital. Defs.' Resp. PSOAF ¶¶ 2, 8. Rush Hospital and Rush Medical Group admit that Dr. Khan's day-to-day responsibilities have not changed from when she was an employee of Associated Pediatrics and now as an employee of Rush Hospital. *Id.* ¶ 9.

Rush Hospital has policies and procedures regarding newborn care. DSOF ¶ 5. Rush maintains that its policies and procedures applied only to nurses. *Id.* Not so, assert Plaintiffs: physicians like Dr. Khan were also required to comply with the

4

policies and procedures. Pls.' Resp. DSOF ¶ 5; PSOAF ¶¶ 5–6. In fact, note Plaintiffs, Dr. Khan identified at least one policy "Discharge of Mothers and Newborns from the Hospital" (Discharge Policy), that also applied to physicians. Pls.' Resp. DSOF ¶ 5; PSOAF ¶ 7. The Discharge Policy provides that, "[d]ischarge of a newborn from a hospital is based on the following criteria: a. A stable axillary temperature of 97.6 to 99.5 degrees F . . . in open crib without additional external heat. b. An established feeding pattern for provision of nutrition. c. Stable cardio-respiratory status." R. 128, Resp. at 5 (quoting R. 129–6, Discharge Pol. at 1). Plaintiffs cite testimony from Dr. Khan's deposition where she was asked "Do you agree that this policy must apply to physicians regarding the safe and appropriate discharge of mothers and newborns from [Rush Hospital]?" to which she responded "Generally, yes." Pls. Resp. DSOF ¶ 5 (citing R. 129–3, Khan Dep. Tr. at 33:4–22).

Dr. Khan also testified there were general rules and regulations to follow in the pediatric department, *e.g.*, seeing a patient within 24 hours of that patient's admission or birth, and seeing the patient daily until the patient was discharged, that she was expected to follow. PSOAF ¶ 5 (citing Khan Dep. Tr. at 23:9–24:4). Dr. Khan further testified that she had to comply with Rush Hospital's bylaws and that she was expected to be familiar with Rush Hospital's policies and procedures. *Id.* ¶ 6 (citing Khan Dep. Tr. at 32:4–12).

On August 22, 2015, Dr. Khan discharged Nathaniel, Jr. from Rush. Defs.' Resp. PSOAF ¶ 16. Nathaniel, Jr. has been diagnosed with severe hypoglycemic brain

5

damage, known as hypoglycemic encephalopathy, and he has cerebral palsy, seizure disorder, and is permanently and severely impaired. *Id.* ¶ 18.[3]

Plaintiffs filed this suit asserting claims of: (1) Medical Negligence against Rush Hospital (Count I); (2) Medical Negligence against Dr. Khan (Count II); (3) Medical Negligence against Rush Medical Group (Count III); and (4) a Family Expense Act claim against Rush Hospital, Rush Medical Group, and Dr. Khan (Count IV, but labeled incorrectly as Count "V"). R. 48, Second Am. Compl. (SAC). Specifically, Plaintiffs allege that if Nathaniel, Jr. had been carefully monitored and frequently assessed to ensure appropriate intake/output, proper and sufficient feedings, and appropriate glucose levels, he would have avoided neurologic injury. Plaintiffs contend that agents of Rush Hospital—including nurses, lactation consultants, and Dr. Khan—are responsible for the alleged failure to provide adequate neonatal care and treatment to Nathaniel, Jr.

Rush Hospital and Rush Medical Group now move for partial summary judgment, arguing that Dr. Khan was an independent contractor, and not an actual or apparent agent, of either Rush Hospital or Rush Medical Group. Mot. Summ. J. On that basis, they maintain they are entitled to summary judgment with respect to any actual or apparent agency claims vis-à-vis Dr. Khan as to both entities. Rush Medical Group further argues there are no direct claims against it, and none of the

---

[3]In their summary judgment briefs, the parties do not include factual assertions regarding the specific treatment received by Nathaniel, Jr., or Plaintiffs' allegations that the standard of care was breached, which are not subjects of the partial motion for summary judgment.

medical providers identified by Plaintiffs were its employees or agents and, therefore summary judgment in its favor is proper.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (cleaned up).[4] In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare,*

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

7

*Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The Court now turns to the merits of Rush Hospital and Rush Medical Group's motion for summary judgment.

**Analysis**

Rush Hospital and Rush Medical Group argue that they are entitled to partial summary judgment because (1) Dr. Khan was not an actual or apparent agent of Rush Hospital or Rush Medical Group when she treated Nathaniel, Jr.; and (2) there is no direct theory of negligence against Rush Medical Group, nor is there record evidence that any nurses or lactation consultants were employed by Rush Medical Group, and therefore, summary judgment in Rush Medical Group's favor is proper.

Under Illinois law, a hospital may be liable for acts of a physician based upon a principal-agent relationship between the hospital and physician.[5] *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E. 2d 788, 792 (Ill. 1993). Agency can be express or implied. *Id.* Liability will only attach to a hospital "where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Id.* at 794 (cleaned up). However, if "the principal retains a sufficient right of control, the actor's status as an independent contractor is negated

---

[5]The Court's subject-matter jurisdiction is based on diversity of citizenship. *See* 28 U.S.C. § 1331. Plaintiffs are citizens of Texas and Defendants are citizens of Illinois. The parties both analyze the claims under Illinois law, as does the Court.

and the principal is subject to liability for the actor's tortious actions under the doctrine of *respondeat superior*." *Magnini v. Centegra Health Sys.*, 34 N.E.3d 1115, 1122 (Ill. App. Ct. 2015) (cleaned up).

For an express agency theory, a principal explicitly grants an agent authority to perform a particular act. *C.A.M. Aff., Inc. v. First Am. Title Ins. Co.*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999). Whether an agency relationship exists is typically a question of fact, however, "a court may decide this issue as a matter of law if only one conclusion may be drawn from the undisputed facts." *Buckholtz v. MacNeal Hosp.*, 785 N.E.2d 162, 170 (Ill. App. Ct. 2003); *see also Prichard Tower Erections, Inc. v. Great Am. Ins.*, 576 N.E. 2d 206, 209 (Ill. App. Ct. 1991).

On the other hand, under an apparent agency theory, "a hospital can be held vicariously liable for the negligent acts of a physician providing care at that hospital, regardless of whether the physician is an independent contractor." *Wallace v. Alexian Brothers Medical Center*, 907 N.E.2d 490, 494 (Ill. App. Ct. 2009). For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that "(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Gilbert*, 622 N.E.2d at 795 (cleaned up). The main consideration in determining whether a person is an

9

agent "is whether the principal retains the right to control the manner in which the work is performed." *Magnini*, 34 N.E.3d at 112 (cleaned up).

The Court first analyzes Rush Hospital's arguments on Plaintiffs' purported failure to comply with Local Rule 56.1. Next the Court analyzes whether summary judgment in favor of Rush Medical Group is warranted based on the factual record. Finally, the Court addresses whether Dr. Khan was an agent of either Rush Hospital or Rush Medical Group.

### I.  Local Rule 56.1 Compliance

Rush Hospital and Rush Medical Group assert that Plaintiffs have forfeited their arguments in opposition to their Motion by failing to cite to the factual record to support the legal arguments contained in their Response brief. R. 143, Reply at 3. Specifically, although Plaintiffs include a statement of fact section in their Response, Plaintiffs fail to cite to any facts from any statement of facts in their legal argument, which spans over nine pages. *Id.*

"In the Northern District of Illinois, Local Rule 56.1 controls the presentation of evidence at the summary judgment stage." *Flint v. City of Belvidere*, 791 F.3d 764, 766–67 (7th Cir. 2015). "The rule requires the party moving for summary judgment to file and serve a 'statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting N.D. Ill. R. 56.1(a)(3)). The party opposing the motion for summary judgment is then required to file and serve "(1) a reply memorandum of law that complies with LR

10

56.1(g)[.]" N.D. Ill. R. 56.1(b). Relevant here, Local Rule 56.1(g) requires each party's memorandum of law to "cite directly to specific paragraphs in the [Local Rule] 56.1 statements or responses." N.D. Ill. R. 56.1(g). Compliance with Local Rule 56.1 "ensures the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination." *Curtis*, 807 F.3d at 219. District courts are entitled to strictly, but reasonably, enforce local rules. *See Igasaki v. Illinois Dept. of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021).

True, as Rush Hospital and Rush Medical Group point out, Plaintiffs fail to cite to any facts from the record in the legal argument section of their brief, although Plaintiffs do include a section titled 'Statement of Facts" within their Response. *See* Resp. at 2–6. But by citing to the LR 56.1 statements in the fact section, and then in the text of the brief being specific enough (*e.g.* Resp. at 10–11, Plaintiffs point to the "Hospital's policy regarding the discharging of mothers and babies"), the Court can reasonably understand on what facts and evidence Plaintiffs rely. Accordingly, the Court will consider Plaintiff's arguments even where they do not strictly adhere to LR 56.1. To the extent any arguments do not cite to the LR 56.1 statements or evidence, and the Court does not understand to what it refers, the Court will not consider it but will so note in the text.

## II. Rush Medical Group Is Entitled to Summary Judgment

Rush Medical Group contends that Dr. Khan is not its agent, and that while Rush Hospital employs nurses and lactation consultants named in the Complaint,

11

there is no claim or evidence against it as a separate defendant. Further, Rush Medical Group argues there is no direct theory of negligence against Rush Medical Group. Therefore, posits Rush Medical Group, there is no evidence supporting any claim against Rush Medical Group, and summary judgment in its favor is proper. Mot. Summ. J. at 10–11.

In their Response, Plaintiffs do not oppose summary judgment as to Rush Medical Group only. Resp. at 16.

Therefore, summary judgment is granted in favor of Rush Medical Group. On this basis, in addressing the agency arguments regarding Dr. Khan in Section III, *infra*, the Court will refer only to Rush Hospital.

### III. Dr. Khan's Agency

Rush Hospital argues that Dr. Khan was not its employee, but an independent contractor, and that it did not have any control over her decisions in providing medical care to Nathaniel, Jr., and, thus, there is no agency relationship between Rush Hospital and Dr. Khan. Mot. Summ. J. at 5.

**A. Actual Agency**

It is undisputed that Dr. Khan was employed by Associated Pediatrics during the relevant timeframe. Mot. Summ. J. at 5. Rush Hospital argues that there is no record evidence that it had any control over Dr. Khan, or her decisions in providing care to Nathaniel, Jr., and, therefore, Dr. Khan was not its actual agent. *Id.*

Predictably, Plaintiffs disagree. First, Plaintiffs insist that Dr. Khan was an actual agent of Rush Hospital while providing care to Nathaniel, Jr. because the

12

hospital provided Dr. Khan to the family as Nathaniel Jr.'s pediatrician since his family had not selected its own pediatrician. Resp. at 10. This argument, however, is a non-starter as Plaintiffs fail to cite any authority in support of this proposition. *See id.*; *U.S. v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (cleaned up).

Second, Plaintiffs note that under Illinois law, the principal must have the right to exercise control of the clinical medical judgment of the alleged agent and not just administrative functions. Resp. at 9 (citing, among other cases, *Hammer v. Barth*, 48 N.E.3d 769, 776 (Ill. App. Ct. 2016)). That is the case here, insist Plaintiffs, because Rush Hospital had "rules" Dr. Khan needed to follow, including bylaws, and be familiar with policies and procedures. *Id.* at 10. Plaintiffs specifically point to Dr. Khan's testimony that she was supposed to follow Rush Hospital's policy regarding discharging the mother and baby from the postpartum unit to support its actual agency theory. *Id.* at 10–11. Therefore, reason Plaintiffs, Rush Hospital had the "right to control" Dr. Khan's medical judgment and clinical decision-making. *Id.* Plaintiffs contend that the policy regarding the discharge of mother and baby is central to Plaintiffs' negligence claim, as Plaintiffs allege Dr. Khan failed to comply with Rush Hospital's policy and violated the standard of care. *Id.* at 11.

Lastly, Plaintiffs maintain that actual agency is established by the fact that Dr. Khan testified that now, as an employee of Rush Hospital since 2019, her day-to-day practice remains the same as it did at the time of the occurrence, and, therefore,

13

Rush Hospital "exerted just as much control and direction of Defendant Khan in her previous role as backup on-call doctor (like when caring for Baby Nate) as it does now that she is formally employed by the institution." Resp. at 11.

In Reply, Rush Hospital argues that there is no evidence in the record that Rush Hospital retained any right to control the manner in which Dr. Khan cared for her patients. Reply at 1. In support, Rush Hospital points to Dr. Khan's status as an employee of Associated Pediatrics, and contends that she was only an independent contractor, and that nothing contained in the bylaws or Discharge Policy—which it insists did not apply to Dr. Khan—would allow the factfinder to conclude that Rush Hospital maintained the right to control her care or treatment of Nathaniel, Jr. *Id.* at 1–2. Rush Hospital explains that at no point did Dr. Khan testify that the nursing policy "controlled" her care of Nathaniel, Jr. *See id.*

As an initial matter, whether an agency relationship exists is typically a question of fact. *See Buckholtz*, 785 N.E.2d at 170. Based on the disputed facts, the Court cannot, as a matter of law, find that Dr. Khan was not Rush Hospital's actual agent. As the movant, Rush Hospital has the burden of either (1) showing there is an absence of evidence supporting an essential element of Plaintiffs' claims, or (2) presenting affirmative evidence negating an essential element of Plaintiffs' claims. *See Hummel v. St. Joseph Cnty. Bd. of Com'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). Here, Rush Hospital has not met that burden, and Plaintiffs have identified disputed facts in the record which support a finding of actual agency.

Specifically, whether Dr. Khan was required to comply with Rush Hospital's Discharge Policy is sufficient to establish a question of fact whether an actual agency relationship exists. *See id.*; Resp. at 8–10. Although Rush Hospital argues that the testimony shows that the Discharge Policy applies only to nurses, at this juncture, the Court finds that the testimony creates a question of fact. For example, in her deposition, Dr. Khan testified that the Discharge Policy applied to physicians. Pls. Resp. DSOF ¶ 5; PSOAF ¶ 7. Dr. Khan also testified (and the Discharge Policy also states) that only doctors, not nurses, can discharge patients. PSOAF ¶ 7.

Rush Hospital argues in its Reply that certain cases cited by Plaintiffs in their Response, *Hammer v. Barth* and *Magnini v. Centegra Health System*, actually support its argument that Dr. Khan was not Rush Hospital's actual agent. Reply at 5, 7. The Court disagrees. In *Hammer*, the plaintiff argued that a service agreement between a doctor and the hospital, the hospital's bylaws, and the hospital's review of the doctor's participation in medical staff meetings, clinical work, adherence to bylaws, rules, regulations and policies, and more, were indicia that the doctor was the actual agent of the subject hospital. 48 N.E.3d at 775–776. The appellate court affirmed the trial court's findings that included, in part, that the hospital's recertification and reappointment process for staff privileges did not indicate sufficient control over the doctor's medical judgment in treating patients, and that the procedures and regulations required of the doctor were mostly administrative. *Id.* at 776.

15

In this case, on the other hand, unlike the mostly administrative requirements in *Hammer*, the Discharge Policy suggests control over Dr. Khan's clinical medical judgment and not just administrative matters. Specifically, that Dr. Khan can only sign off on a discharge if she finds the patient has (1) a stable temperature, (2) established feeding pattern, and (3) stable cardio-respiratory status. Resp. at 10–11. Drawing all reasonable inferences in favor of the Plaintiffs, as the Court must do on summary judgment, there is an open question of fact whether Rush Hospital had the right to control Dr. Khan by virtue of the Discharge Policy. *See Scott*, 550 U.S. at 378.

Further, although Rush Hospital identifies another case cited by Plaintiffs, *Magnini v. Centegra Health System*, as helpful to Rush Hospital, the Court finds *Magnini* illustrates the difference between a physician being subject to merely administrative policies of a hospital, versus a physician being subject to a patient care policy of a hospital. In *Magnini*, the appellate court affirmed summary judgment on behalf of the defendant doctors, finding that they were independent contractors and not agents of the defendant hospital. 34 N.E.3d at 1117. In doing so, the court rejected the plaintiff's contention that the fact that the doctors were subject to certain hospital policies and procedures contained in that hospital's bylaws—which required among other things, for the doctors to prepare medical records for patients, to be in the operating room at time of surgery, and to request consultations when such consultations would benefit the patient—rendered the doctors the hospital's agents. *Id.* at 1123. All of these matters, observed the appellate court, "concern[ed] matters that are collateral to patient care decisions, which remain in the exclusive control of

16

physicians." *Id.* In *Magnini*, the physicians testified to their independence in making medical judgments, and the bylaws plaintiff identified as supporting control over the physicians explicitly stated that the consultation decisions were left to "the judgment of the attending practitioner." *Id.*

In contrast, here, Dr. Khan's purported compliance with a Discharge Policy for Nathaniel, Jr. cannot be reasonably construed as following a policy "collateral" to patient care decisions. Further, Rush Hospital has not identified anything in the factual record that Dr. Khan retained independent medical judgment in making the discharge decision, unlike the physicians in *Magnini*. Instead, Rush Hospital points to Dr. Khan's testimony that the "policies and procedures are actually more for like nursing, so they follow them very closely and then we work with in conjunction with them." Defs.' Resp. PSOAF ¶ 7. At this stage, this suggests it remains an open question of fact whether Rush Hospital retained the right to control Dr. Khan's decision making. Thus, facts in this case are distinguishable from the facts in *Magnini*, where no comparable patient care policy was identified by plaintiffs in support of an actual agency theory.

Moreover, although Plaintiffs concede that Dr. Khan was not the employee of Rush Hospital at the time of the occurrence, this is not dispositive to the agency inquiry. Pls.' Resp. DSOF ¶ 2. Under Illinois law, a person's status as an independent contractor may be negated, and "[t]he intent of the parties is not dispositive if the conduct of the parties demonstrates the existence of an agency relationship." *Magnini*, 34 N.E.3d at 1122 (citing *Oliveira–Brooks v. Re/Max International, Inc.*,

17

865 N.E.2d 252 (Ill. App. Ct. 2007)). Thus, in analyzing the conduct of Dr. Khan, and the facts alleged by the parties as Nathaniel, Jr.'s discharging doctor at Rush Hospital, after Dr. Khan was assigned by Rush Hospital to him, and in construing the evidence in the light most favorable to Plaintiffs, the factual underpinnings of Plaintiffs' actual agency claim for Dr. Khan are sufficient to raise a question of fact whether Dr. Khan was Rush Hospital's actual agent, and this question of fact is not overcome by Dr. Khan's status as an employee of a different entity.

The Court recognizes that there may be many similar cases involving physicians with privileges at hospitals, and the foregoing analysis should not be read to imply that physicians with privileges at hospitals are *de facto* agents of that hospital because they are subject to that hospital's policies. Rather, the agency issue is a fact-intensive analysis, and on these facts the Discharge Policy in question raises a question of fact whether Dr. Khan was Rush Hospital's actual agent based on the testimony and evidence in this record.

The Court having found that Plaintiffs have raised a genuine issue of material fact whether Dr. Khan was an actual agent of Rush Hospital, based on the hospital's Discharge Policy, need not address the Plaintiffs' remaining argument.

In summary, the Court finds that Plaintiffs have raised a genuine issue of material fact as to whether Dr. Khan was Rush Hospital's actual agent, and the Court denies summary judgment for Rush Hospital on its agency claims for Dr. Khan. On that basis, the Court need not reach whether Dr. Khan was an apparent agent of Rush Hospital.

**Conclusion**

For the foregoing reasons, Rush's partial motion for summary judgment [121] is granted in part and denied in part. The Court denies summary judgment for Rush Hospital with respect to the actual and apparent agency claims for Dr. Khan in Counts I and IV of the SAC. The Court grants summary judgment in favor of Rush Medical Group and against Plaintiffs for Counts III and IV of the SAC, and Rush Medical Group is terminated from this case.

The Court observes from the docket that Defendants have not answered the SAC. The remaining Defendants, Rush Hospital and Dr. Khan, are ordered to file their respective Answers to the SAC (R. 48) on or before May 25, 2023.

Dated: May 11, 2023

United States District Judge
Franklin U. Valderrama